IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                  v.

RASHAWN SALMON,

           Defendant.

_____

**ATTORNEY
DECLARATION**

24-cr-156

Eric M. Soehnlein, Esq., declares the following under penalty of perjury:

1. I am an attorney at law duly licensed to practice in the United States District Court for the Western District of New York.  Together with Carla Benz, Esq., I represent Rashawn Salmon in the above matter.  As such, I am familiar with the facts and circumstances of this case.

2. I make this declaration in support of Salmon's pretrial motions seeking an Order of the Court: suppressing the fruits of GPS tracking warrants for Salmon's GMC Denali truck; suppressing the fruits of the production of records associated with Salmon's cell phones and email addresses; suppressing the fruits of searches of Salmon's residence and business;  holding a *Franks* hearing as to the search warrant application relating to Salmon's home and business; mandating the identification of confidential informants in this case; mandating the production of a bill of particulars as to the conspiracy count in the indictment; mandating

1

Rule 12 and Rule 16 discovery; mandating the production of 3500 disclosure 60 days before trial; mandating the disclosure of evidence pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence; and permitting the defense to make further motions in accord with principles of fairness and due process.

## I.     Background

3. Rashawn Salmon was arrested on August 28, 2024 and charged by criminal complaint with possession with intent to distribute illicit narcotics in violation of 21 U.S.C. 841 and its subparts.  W.D.N.Y. Case No.: 24-mj-5183, Dkt.# 1.

4. On December 11, 2024, a federal grand jury indicted Mr. Salmon on four counts: a narcotic conspiracy starting in "early 2023" and continuing until August 28, 2024 in violation of 21 U.S.C. 846; possession with intent to distribute 400 grams or more of fentanyl within 1000 feet of a playground in violation of 21 U.S.C. 860; possession with intent to distribute 100 grams or more of fentanyl analogue within 1000 feet of a playground in violation of 21 U.S.C. 860; and maintaining a drug involved premises within 1000 feet of a playground in violation of 21 U.S.C. 860.  Dkt.# 15.

## II.     Motion to Suppress Fruits of GPS Tracker Warrants

5. On October 23, 2023, the government applied for a warrant to place a GPS tracking device on a white 2019 GMC Sierra Denali Edition truck registered to Rashawn Salmon.  The warrant application is **Exhibit 1**, filed under seal.  Upon

information and belief, the fruits of the first GPS tracking warrant led to subsequent applications.  **Exhibit 2**.

6. The warrant application is primarily supported by SA Middlebrooks' summary of confidential human source (CHS) reporting.   According to SA Middlebrooks, the CHS reported that he had received ████████████████ from Salmon; that the CHS does not know where Salmon stores narcotics, but that Salmon owns several properties in Niagara Falls; that Salmon frequently changes his telephone number; that CHS had seen Salmon operate the Denali truck and had seen it parked outside of addressed that CHS believe Salmon owned/operated; and that, ████████████████████████████████ ██████████████████████████████.[1]

7. The search warrant application did not include an affidavit from any CHS.  It also does not appear any CHS appeared before the Magistrate Judge at the time of the warrant application.  The defense is unaware of what efforts, if any, were undertaken by law enforcement to corroborate allegations made by any confidential source.  Salmon denies the allegations made by the confidential source.

---

[1] The warrant application provided to the defense is highly redacted.  The defense has done its best to summarize the allegations based on the redacted version of the warrant application provided.

8.  From that factual predicate, the government obtained a GPS tracker warrant for the Denali truck, allowing the FBI to place a tracker on the vehicle for 45 days. Exhibit 1 at p. 14.

9.  By the plain language of the warrant application, there is no allegation that the Denali truck was involved in the transport or sale of narcotics. There is also no allegation the Denali truck was involved in any illegal conduct.

10. The Fourth Amendment to the United States Constitution provides that:

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

    U.S. Const. Amend. IV.

11. The defense concedes, the Supreme Court has characterized probable cause as "a fluid concept" that is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

12. The probable cause inquiry "turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence." *United States v. Martin*, 426 F.3d 68, 76 (2d Cir. 2005). "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and

depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

13. Where the nexus between the alleged criminality and the vehicle to be tracked is too tenuous, the fruits of the GPS tracker warrant should be suppressed. *See, e.g., United States v. Lopez-Zuniga*, 909 F.3d 906 (8th Cir. 2018).

14. That is the case here.

15. To the defense's knowledge, there is no allegation that the Denali truck was used in any alleged illegal activity, and there is no allegation that the Denali truck was used to transport narcotics.

16. At most, the government's allegations establish the Denali truck may have belonged to Salmon and that, at some unspecified point in time, Salmon had been involved in the sale of narcotics. There is no connection to the Denali truck and the allegations at the heart of this case.

17. Simply put, on this record, the nexus between the allegations in the warrant application and surveillance of the Denali truck are too tenuous. The fruits of the search should be suppressed.

## III.    Motion to Suppress Fruits of Apple, Inc. Order

18. On December 1, 2023, the government sought an Order from Apple, Inc. identifying records associated with cell phones 716-534-2460 and 716-550-9794.

The application also sought records associated with email address

rashawnsalmon@gmail.com.  **Exhibit 3.**

19.  In support of the application, the government merely asserted that a CHS had

██████████████████████████████████, and that law enforcement

had learned that numbers 716-534-2460 and 716-550-9794 were associated with

Salmon through subscriber information.  Exhibit 3, para. 8. The government

made the same assertions with respect to the email account Id.

20. There is no allegation that the above-referenced phone numbers or email account

were used in connection with unlawful activity.

21.  The relevant statute provides:

(d) **Requirements for court order.** A court order for disclosure under subsection
(b) or (c) may be issued by any court that is a court of competent jurisdiction and
shall issue *only if the governmental entity offers specific and articulable facts showing
that there are reasonable grounds to believe that the contents of a wire or electronic
communication, or the records or other information sought, are relevant and material to
an ongoing criminal investigation*. In the case of a State governmental authority,
such a court order shall not issue if prohibited by the law of such State. A court
issuing an order pursuant to this section, on a motion made promptly by the
service provider, may quash or modify such order, if the information or records
requested are unusually voluminous in nature or compliance with such order
otherwise would cause an undue burden on such provider. (italics for emphasis).
18 U.S.C.S. § 2703 (d)

22. The government's application fails to provide "specific and articulable" facts

showing reasonable grounds to believe the information sought is relevant to a

criminal investigation.

23. Indeed, the CHS reporting the government relied upon in seeking the order indicated that Salmon had not utilized the phone numbers or the email address for narcotic sales or for any other unlawful purpose.

24. This is in stark contrast to other cases where 2703(d) orders have been permitted. *See, e.g., United States v. Warshak*, 631 F.3d 266, 2010 FED App. 0377P, 2010 U.S. App. LEXIS 25415 (6th Cir. 2010) (The government's application indicated that (1) it was investigating complex, large-scale mail and wire fraud operation; (2) interviews of current and former employees of target company suggested that electronic mail was vital communication tool that had been used to perpetuate fraudulent conduct; and (3) various sources had verified that particular Internet service provider provided electronic communications services to certain individuals under investigation).

25. In seeking the 2703 order, the government failed to meet the standard.  As such, records produced pursuant to the 2703 order should be suppressed.

**IV.     Motion to Suppress the Search of 3659 Packard Road, Niagara Falls, New York and 327 Hyde Park Boulevard, Niagara Falls, New York**

26. On August 27, 2024, the government applied for a search warrant to search 3659 Packard Rd., Niagara Falls, New York, 327 Hyde Park Boulevard, Niagara Falls, New York, and various other properties associated with Paul Fields, Edward Rollie and Jermaine McQueen.  As the Court knows, Fields, Rollie and McQueen

are not charged alongside Salmon, who is the only defendant in the instant indictment.

27. From the defense's review of the search warrant application, there does not appear to be any allegation of illegal activity at the Packard Road address. Likewise, despite several attempts to observe illegal activity at the Hyde Park Boulevard address, there is no observation of illegal activity at that address.

28. The defense was provided a redacted version of the search warrant application.[2] **Exhibit 4**.   The Court granted the government's application for a search warrant, and the warrants were executed on August 28, 2024.

29. Despite the length of the warrant application, the majority of the content is unrelated to Salmon.  What is more, of the content that does relate to Salmon, most of the content is historical, untethered to the present or to the other individuals at issue in the search warrant application.

### a.  Allegations that are not related to Salmon

30.  The warrant application is 160 paragraphs long.  It recounts historical information, information shared by human sources and confidential informants, and observations from surveillance.

---

[2] The defense acknowledges that AUSA Lynch and SA Middlebrooks met with the defense at the United States Attorney's Office to provide additional detail about the warrant application and the information that is redacted in the version of the application provided to the defense.

31. At page 16 of the warrant application, SA Middlebrooks summarizes the relevant "probable cause" paragraphs for each potential defendant. Despite the application being 160 paragraphs long, by the government's own admission only 42 of those paragraphs are directed at Salmon.

32. The majority of the search warrant application summarizes the government's investigation into Fields, Rollie and McQueen. While much of the application remains redacted from the defense, it appears that, with regard to the other individuals, the application summarizes information gathered from confidential sources, controlled narcotic purchases, intercepted conversations, and other present-day activities. These allegations do not appear to have any relation to Salmon, but they are included in the same warrant application.

33. That is particularly important given the government's use of intercepted communications through wiretaps and other measures in this case. Whereas those measures appear to have memorialized incriminating statements on the part of Fields, Rollie and McQueen, that is not the case with regard to Salmon.

   **b. Historical Information**

34. The majority of the information contained in the search warrant application regarding Salmon is historical, with the government purporting to summarize acts from the past that often did not result in charges against Salmon.

35. For instance, the warrant starts by recounting traffic stops involving Salmon in the State of Tennessee from 2009 and 2010 – over fifteen years ago.  It is the defense's understanding that these traffic stops did not result in charges against Salmon. Exhibit 4 at para. 26.

36. The warrant application also summarizes and relies upon a traffic stop from September of 2014 – an incident in which another individual ultimately pled guilty for drugs and money found inside the vehicle and where charges against Salmon were dismissed.  Id.

37. The government also relies on the assertion that in 2013 Salmon traveled to Columbia with Brandon Washington, and individual who was later prosecuted for narcotic crimes.  Id at para. 27.  Whether or not that travel occurred, it did not result in any charges against Salmon in 2013 or at any point in time in the last twelve years.

38. The government also summarizes information it purportedly received from a "concerned citizen" ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████.

39. The application also purported to summarize an episode in Baltimore, Md. in 2020 where two individuals Salmon knew were charged with federal narcotics charges after a reverse buy for 12 kilograms of cocaine.  To be clear, Salmon has never been charged with any crimes associated with the 2020 incident.

40. The application also asserts that Salmon played a part in approximately $350, 000 that was seized from an automobile on a commercial car hauler in 2018.  Salmon has never been charged with any wrongdoing associated with that incident.

41. Thus, with regard to Salmon, the bulk of the warrant application makes allegations about Salmon in the 2009-2020 time period.  Nearly all of the incidents alleged in the application did not result in charges against Salmon. None of the incidents resulted in criminal convictions.

       **c.  Lack of Probable Cause to Search Packard Road and Hyde Park Boulevard**

42. Stripping away the historic allegations, the government's remaining allegations about Salmon do not support probable cause to search 3659 Packard Road or 327 Hyde Park Boulevard.

43. Independent of the purely historic allegations, the application relies on confidential human sources who make sweeping allegations about Salmon and on observations of Salmon with other individuals that are non-criminal.

44. Indeed, in an investigation that lasted years, involved a number of informants and clandestine law enforcement tactics, this is a case where there are no

controlled purchases or direct evidence of illegal activity supporting the search
or arrest of Salmon or the properties associated with him.

45. With regard to the confidential human sources, they make broad allegations that
Salmon has been a drug dealer in the past (para. 41, 55) and broad (apparently
uncorroborated) allegations that Salmon is or has been violent in the past (para.
46, 57).

46. Although there are multiple confidential human sources, it is unclear whether
law enforcement undertook efforts to corroborate these allegations.

47. Law enforcement observation of Salmon does not memorialize illegal activity. It
observes Salmon with Fields (para. 130-131, 135, 149). It also establishes Salmon
near Rollie and individuals associated with Rollie (para. 138). Law enforcement
takes the position that these interactions are consistent with narcotic transactions;
they are also consistent with individuals who are friends and who are engaging
in non-criminal social relationships.

48. Despite several attempts, law enforcement did not observe illegality associated
with Salmon's business on Hyde Park Boulevard.

49. ███████████████████████████████████████
███████████████████████████████████
████████████████████████████████████████
███████████████████████████████████



50.

51. The warrant application also relies on observations of a late-night meeting at

Salmon's auto shop (para. 140).   While law enforcement observation purports to

have witnessed a meeting at the auto shop after hours, however, it did not and

does not recount observation of illegal activity.

### d. Legal Standard

52. "To establish probable cause to search a residence, two factual showings are

necessary—first, that a crime was committed, and second, that there is probable

cause to believe that evidence of such crime is located at the residence." *United

States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983).

53. "[P]robable cause to search a place exists if the issuing judge finds a 'fair

probability that contraband or evidence of a crime will be found in a particular

place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991).

54. The "[t]wo critical factors in determining whether facts supporting a search warrant are stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998).

55. The reviewing court may conclude that a warrant lacks probable cause where the evidence supporting it is not sufficiently close in time to the issuance of the warrant that probable cause can be said to exist as of the time of the search — that is, where the facts supporting criminal activity have grown stale by the time that the warrant issues. The law recognizes no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case. The two critical factors in determining staleness are the age of the facts alleged and the nature of the conduct alleged to have violated the law.  *United States v. Raymonda*, 780 F.3d 105, 109 (2d Cir. 2015).

> **e.  Most of the Facts Supporting the Application are Unsupported and Stale**

56.  The most serious allegations made in the search warrant application flow from incidents that are several years old and that did not support criminal charges against Salmon at any time.  The most recent of those allegations is from 2020. Those allegations should be wholly disregarded in determining probable cause to search Salmon's residence and business.

57. The remaining allegations do not support probable cause to search the Packard Road or the Hyde Park Boulevard addresses.   There is no observation of unlawful activity at either address.  Likewise, statements of CHS also do not allege wrongdoing at those locations.  To the contrary, despite numerous attempts made by law enforcement to observe illicit conduct in both locations, the government did not memorialize criminal conduct at either location.

58. Stripped of the historic, unsupported allegations, the warrant application lacks probable cause.  As such, the fruits of the search of Salmon's home and business should be suppressed.

> **f.   There is no nexus between any potential items to be seized and Mr. Salmon's home or business**

59. There needs to be some independent connection or "nexus" between "the item to be seized and criminal behavior." Warden v. Hayden, 387 U.S. 294, 307 (1967). Further, the critical element…"is not that the owner of property is suspect of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily 436 U.S. 547, 556 (1978); see also Untied States v. Lalor, 996 F.2d 1578. 1582 (4th Cir. 1993) ("In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the crime is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched.").

60. Here, the is nexus between potential items to be seized and the two properties at issue. The affidavit is completely silent as to what law enforcement even anticipates could be found in these properties because they have not received any information in that regard. There are no allegations of recent drug sales, that drugs were stored in these properties, individuals had seen drugs in these properties, or that the properties were used to facilitate drug sales in any way.

## V.    Motion for a *Franks* Hearing

61. The August 26, 2024 search warrant application relied heavily on information related to three other individuals (almost 75% of the information in the search warrant application pertained only Paul Fields, Edward Rollie, and Jermaine McQueen.  To tie Mr. Salmon to these individuals, investigators submitted an application not for individuals warrants, but for nineteen separate warrants.

62. As noted earlier, the vast majority of paragraphs do not make any allegations against Salmon.  Additionally, the affidavit fails to make any relevant connection between Salmon and the other individuals mentioned above.

63. To cloud the judgement of the magistrate, investigators included information about the other individuals – against whom the defense believes evidence is more direct and more compelling -- to obfuscate issues of probable cause related to Salmon. The affidavit jumps from talking about the surveillance of one

unrelated individual, to a historical event alleged to be tied to Rashawn, and then back to information completely unrelated to Salmon.

64. The requirements that a neutral magistrate independently determine the existence of probable cause "would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." *Franks v. Delaware*, 438 U.S. 154, 168 (1978).

65. Thus, if a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause, a hearing is required. *Franks*, 438 U.S. at 155-56. If, after the hearing, the defendant establishes these facts by a preponderance of the evidence, the evidence must be suppressed. *United States v. Scully*, 108 F.3d 59, 96 (E.D.N.Y. 2015). Additionally, a material omission that renders an affidavit misleading qualifies as a "false statement" under *Franks*. *United States v. Ferguson*, 758 F.2d 843 (2d Cir. 1985).

66. Here, knowing that the probable cause standard could simply not be met as to Salmon, investigators made a conscious decision to include information pertinent to other investigations and other individuals in the affidavit for Salmon's properties.

67. As noted above, the affidavit lacks a nexus to any criminal activity involving Salmon's home or business:(1) there was no confidential informant providing observations of drugs or drug activity from inside Salmon's home or business; (2) no proof or allegations of sales from the home or business; (3) no observations of drug activity in the immediate vicinity of his home or business; and (4) no neighborhood complaints or other calls to law enforcement alleging drug activity at this location.

68. Instead, law enforcement relied on its investigation of others in order to attempt to bolster their probable cause to search Mr. Salmon's person, residence, and business. The Court cannot determine the full extent of the investigation (or lack thereof) leading up to the search warrant application without an evidentiary hearing.

69. Additionally, the search warrant affidavit fails to disclose pertinent information regarding the confidential source's and their reliability or lack thereof.

70. The defense requests that the Court hold an evidentiary hearing on this issue, to further explore these issues surrounding law enforcement obtaining search warrants for Salmon's residence and business. This is an inherently fact dependent inquiry that relates both to the state of mind and intent of the investigators and this issue cannot be resolved without testimony on these issues.

## VI.    Motion for the Identification of Confidential Informants

71. As is evident from the search warrant application, the government's investigation in Salmon, Rollie, McQueen and Fields, and therefore the government's application for the resultant search warrants, relied on statements of confidential informants.

72. Accordingly, Salmon moves this Court, pursuant to the provisions of Rule 16 of the Federal Rules of Criminal Procedure and the Fifth Amendment to the United States Constitution, for an Order requiring the government to disclose the following information: (a) The identity of any and all informants possessing information which may be material to defendant's alleged guilt or innocence; (b) The identity of any and all informants who were present at any of the events which are described in the instant indictment; (c) Any and all government reports containing information received from any informant referenced above which may be material to the instant case.

73. Informants are percipient witnesses to the allegations contained in the instant indictment, and they may also possess exculpatory and exonerating information. With respect to item (c), Salmon requests these reports on the ground that, to the extent he has been unable to review reports containing factual information

relayed by that informant, he has been unable to lay proper factual foundation for the disclosure of the informant.

74. At a minimum, Salmon seeks to have all reports described above submitted in camera to the Court for review and subsequent disclosure to counsel. In the event that the Court does not compel disclosure of this information and the identities of the informants, defendant respectfully requests that all government reports be sealed and made part of the record in the instant case.

### a. The government is Obligated to Disclose the Identity and Whereabouts of Informants and Make Them Available to the Defense

75. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623 (1957), the United States Supreme Court held that whenever an informant's testimony may be relevant and helpful to the accused's defense, his or her identity must be revealed. The *Roviaro* Court set forth the following general standard for disclosure: "Where the disclosure of an informant's identity or the contents of his communications is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause, the privilege must be waived. In these situations, the trial court may require disclosure and, if the government withholds the information, dismiss the action." *Roviaro v. United States*, supra, 353 U.S. at 60-61.

76. The Court made clear that, while there is no fixed rule with respect to disclosure, four considerations are relevant: (1) the crime charged; (2) the possible defenses;

20

(3) the possible significance of the informant's testimony; and (4) other relevant factors.

77. The "relevant and helpful" language of has been interpreted by the Second Circuit "to require disclosure when it is material to the defense." *DiBlasio v. Keane*, 932 F.2d 1038, 1041-1042 (2d Cir. 1991). The *DiBlasio* Court recognized that: The judge must consider a number of factors in determining whether the informant's testimony is material: "the crime charged, the possible defenses, the possible significance of the informant's testimony and other relevant factors."

78. Similarly, the Ninth Circuit requires disclosure of the identity of an informant when he or she is a percipient witness. Thus, in *United States v. Cervantes*, the Court recognized that a "percipient witness" must be disclosed: "The government acknowledges that the informant Duque was a percipient witness to the transaction. It therefore supplied Cervantes with the informant's identity." *United States v. Cervantes* 542 F.2d 773, 777 (9th Cir. 1976) (en banc).

79. The law is also clear that where an informant's testimony is essential to a fair determination, the government may be required to disclose his identity and address, if any. *United States v. Roberts*, 388 F.2d 646 (2d Cir. 1968). *See also, United States v. Anderson,* 509 F.2d 724 (9th Cir. 1975) (within the court's discretion to compel disclosure even when use of the informant goes only to probable cause).

80. Further, the need for disclosure and production of the informant is mandated when the indictment contains a conspiracy charge and the informant could have information regarding either knowing membership in the conspiracy or possible entrapment. *United States v. Mormon*, supra; *Lopez -Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966).

81. Obviously, it is not Salmon's burden to prove what the informant would actually say if disclosed since the informant's unavailability makes that burden impossible to discharge in all cases. *See, e.g., United States v. Mormon*, supra, where disclosure should have been made because the informant "might have corroborated the [defendant's story]." Id. at 362.

82. As stated by the Court in *United States v. Day*, supra: "No matter how inert his role of participation he might still possess information relevant to a fair determination of the issues".

83. As to all informants, the defense is entitled to a revelation of their whereabouts and addresses prior to trial so that sufficient investigation into their background can be made. As stated by the Court in *United States v. Hernandez*, supra: "We recognize that the address of a principal witness, as [the informant] most assuredly was, is an integral element of identity for without such information, little meaningful inquiry can be made into the background information affecting credibility." *United States v. Hernandez*, 608 F.2d 741, at 745 (9th Cir. 1979).

84. In this case, therefore, the location and present whereabouts of any and all informant[s] must be immediately disclosed so that an investigation may be made into the credibility and background of the informant[s] prior to trial.

85. Further, any purported government assertion that there is some unspecified danger to informant[s] is insufficient to justify withholding the information concerning his or her whereabouts. As *Hernandez* makes clear, the decision concerning potential "danger" must be made only after an evidentiary hearing. *Hernandez*, supra, 608 F.2d at 745, fn.3.

86. Finally, the government's obligation is not fully satisfied by merely disclosing the identity and location of the informant[sl. The defense here specifically requests that the informant[s] be produced.  Courts have held that the government has an obligation to "accomplish this or show that, despite reasonable efforts, it was not able to do so". *United States v. Hart*, 546 F.2d 798, 799 (9th Cir. 1976) (en banc). *See also, United States v. Cervantes*, supra; *Velarde-Villa Real v. United States*, 354 F.2d 9 (9th Cir. 1965).

87. For the reasons cited above, it is apparent that any such informant[s] in this case is a material witness. The government should be ordered to disclose the identity of that witness and his or her whereabouts, and to make those witnesses available to the defense. Failure to do so would require dismissal of the case.

   **b. Upon Proper Showing, the Defendant is Entitled to Pre-trial Access to Prosecution Witnesses**

88. In *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973), the Second Circuit held that it was reversible error to deny pre·trial disclosure of the identity of a witness to the defendant's similar criminal conduct. *See also, United States v. Allstate Mortgage Corp.*, 507 F.2d 492 (7th Cir. 1974) (rule of *Baum* adopted and approved).

89. Moreover, an order requiring pretrial disclosure of government witnesses is a proper exercise of judicial authority. *See United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973) (affirming the authority of the trial court to order pre-trial discovery of prospective government witnesses); *United States v. Jackson*, 508 F.2d 1001, 1006-1007 (7th Cir. 1975) (a trial court can enter and order sua sponte and without a showing of materiality requiring pre-trial disclosure of prospective government witnesses.).

90. The United States Supreme Court first addressed the disclosure of government witnesses in *Alford v. United States*: "Cross-examination of a witness is a matter of right. Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood; that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment; and that facts may be brought tending to discredit the witness by showing that his testimony in chief as untrue or biased .... Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the

weight of his testimony and his credibility to a test, without which the jury

cannot fairly appraise them. *Alford v. United States*, 282 U.S. 687, 688 (1931).

91. Subsequently, in *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748 (1967), the Supreme

Court reconsidered the rule of *Alford v. United States* and held that the failure to

disclose the address of a primary prosecution witness was a denial of the

defendant's Sixth Amendment right to confront and cross-examine witnesses.

The Court stated: "The witness' name and address open countless avenues of in-

court examination and out-of-court investigation. To forbid this most

rudimentary inquiry at the threshold is effectively to emasculate the right of

cross-examination itself." Id. at 750.

92. Therefore, it is the defendant's position that an accused has the right to know the

identity and location of prospective government witnesses so that he may

interview them prior to trial in order to put such witnesses in proper setting for

purposes of credibility and cross-examination.

93. For the reasons set forth above, it is respectfully requested that the identity and

location of the prospective government witnesses be disclosed and that they be

produced by the government prior to trial.

94. Disclosure of informant information in this prosecution is essential to a fair

determination of the charges filed against the defendant. Salmon is entitled to

know whether government informants, who are criminals based on their actions

in purchasing drugs and participants in and witnesses to criminal activity, have

any knowledge of whether Salmon was involved in alleged criminal activity.

95. In addition, the defense demands the following information about any and all

informants:

   a.  All evidence affecting the issues of bias or credibility;

   b.  Their criminal records, *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980);

   c.  All promises or consideration of any kind given to the informants, *Giglio v.*
       *United States*, 405 U.S. 150 (1972);

   d.  Identification of the informants' prior testimony, *Johnson v. Brewer*, 521
       F.2d 556 (8th Cir. 1975);

   e.  Evidence of psychiatric treatment of each informant or cooperating
       witness or person, *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983);

   f.  Evidence of the informants' narcotic habits, *United States v. Fowler*, 465
       F.2d 664 (D.C. Cir. 1972);

   g.  Whether the informants are being compensated, including favorable plea
       agreements, in return for their cooperation with the government. *United*
       *States v. Morell*, 524 F.2d 550 (2d Cir. 1975);

   h.  A review of the informant file kept by the authorities for each informant.

96. The inherent unreliability of the testimony of an accomplice or government

informant underscores the need for complete disclosure of information relating

to credibility. *See United States v. Bagley*, 473 U.S. 667 (1985); *Perkins v. LeFevre*, 642 F.2d 37 (2d Cir. 1981); *United States v. Caldwell*, 466 F.2d 611 (9th Cir. 1972).

97. Put another way, "[t]he use of informants to investigate and prosecute persons is fraught with peril." *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir. 1993).

98. Thus, both the law and fundamental fairness dictate that Salmon be provided with the information requested above.

### VII.    Motion for a Bill of Particulars

99. The indictment alleges a narcotic conspiracy starting in "early 2023" and continuing until August 28, 2024.  It does not name other coconspirators or any acts in furtherance of the conspiracy.  It does not specify a start date.  It does not identify the potential drug weight associated with the conspiracy.

100.    As the Court well knows, Rule 7(f) of Federal Rules of Criminal Procedure permits the Court to direct the filing of a bill of particulars.

101.    As recognized by the Second Circuit, a bill of particulars has three functions: (1) to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead an acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, indefinite or lacks specificity. *United States v. GAF Corp.* , 928 F.2d 1253 (2d Cir. 1991); *United States v. Davidoff*,

27

845 F.2d 1151 (2d Cir. 1988); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987).

102.    The particulars requested are also necessary because the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused. *United States v. Torres*, 901 F.2d 205 (2d Cir. 1990).

103.    Without such specification as to the nature of his allegedly improper conduct, Salmon is without ability to prepare for trial and the danger of surprise at trial is greatly increased. *See, also, United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (prosecutor was required to advise the defendant, through a bill of particulars, which specific documents they intended to rely upon in a mail fraud prosecution).

104.    As recognized by the Court in *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989), prior to 1966, Rule 7 limited bills of particulars to those situations in which the moving party demonstrated the cause for his request. By amending the rule in 1966 to eliminate the cause requirement, the drafters expressly sought 'to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7 Advisory Committee's note to 1966 amendment. Consistent with this shift, the case law now recognizes that motions for bills of particulars should be granted whenever an indictment's

failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial.

105.    In accord to these principals, we request that the specified particulars be supplied because without such information counsel's ability to prepare a defense is significantly impaired and it is likely that prejudicial surprise at trial will occur.

106.    For the reasons set forth above, and for the additional reasons set forth below, the defendant requests the following particulars as to each count (i.e., each separate conspiracy):

   a.  A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial. *See United States v. DeGroote*, 122 F.R.D. 131, 137-39 (W.D.N.Y. 1988) (collecting cases); *United States v. Feola*, 651 F. Supp. 1068, 1133-34 (S.D.N.Y. 1987), affd., 875 F.2d 857 (2d Cir. 1989) (mem.);

   b.  The specific times, dates and locations when and where Salmon and other co-conspirators combined and agreed to possess with intent to distribute the controlled substance in question listed in each count and when each individual joined the conspiracy and the date they left the conspiracy;

c.  How the co-conspirators, including Salmon, knowingly, willfully and unlawfully combined, conspired and agreed together to possess with intent to distribute the controlled substances in question;

d.  List all uncharged overt acts undertaken by the coconspirators, including Salmon;

e.  List the exact weight of all controlled substances that Salmon allegedly conspired with co-conspirators to possess with intent to distribute, and the date(s) on which Salmon conspired to possess each amount of each controlled substance and specifically how much controlled substances were distributed by the conspiracy as of the date of the indictment;

f.  Whether or not any individual present during the commission of any alleged acts was acting for the government, and the names, or names then used or similar identification, of any such person;

g.  The names, to the extent known, of any persons present when the overt and substantive acts allegedly took place;

h.  The dates, to the extent known, when each defendant joined the conspiracy, and the date on which the conspiracy ended, including the dates when each defendant left the conspiracy, if different than the alleged ending date. *See United States v. Feola*, 651 F. Supp. 1068, 1134 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989); *United States v. DeGroote*, 122

F.R.D. 131 (W.D.N.Y. 1988); *United States v. Scott*, 93-CR-26E (W.D.N.Y. 1994);

    i.    The quantity of controlled substance distributed and possessed by defendant and each co-conspirator during the course of the alleged conspiracy to the extent that this information will be presented by the government at trial.

107.    In *United States v. Barnes*, 158 F3d 662 (2d Cir., 1998) the Second Circuit Court of Appeals had occasion to determine whether and, under what circumstances an expanded bill of particulars should be granted. There, the court found that the indictment provided "not a shred of detail" and, therefore, the defendant was entitled to be otherwise apprised of the conduct that he was alleged to have undertaken in furtherance of a multi- faceted if not "multiple, conspiracy." (Relying on *United States v. Ramirez*, 602 F. Supp.783, 793 (SDNY, 1985); *United States v. Feola*, 651 F. Supp. 1068, 1133 (SDNY, 1987), affd, 875 F2d 857 (2d Cir.), cert denied, sub nom. *Marin v. United States*, 493 US 834 (1989).

108.    Indeed, the court went on to state that it was of no consequence that the information which was requested by the defense would have required the "disclosure of evidence or the theory of the prosecution." The court found specifically that "while a bill of particulars is not intended as such, as a means of learning the government's evidence and theories," if necessary to give the

defendant enough information about the charge to prepare his defense, 'it will be required even if the effect is disclosure of evidence or of theories' " (citation omitted).

109.     The court should only deny a bill of particulars where the information sought by the defense is actually provided in the indictment. Here, with respect to the conspiracy, the indictment is "bare bones" and provides virtually no detail concerning the various acts covered by the indictment. *United States v. Bortnovsky*, 820 F2d 572, 574 (2d Cir., 1987).

110.     Accordingly, the defense respectfully requests a bill of particulars to safeguard's Salmon's rights and the fairness of this prosecution.

**VIII.    Motion for Rule 12 and Rule 16 Discovery**

111.     The government has provided voluntary discovery.

112.     However, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)(B)(C) & (D), the defendant now moves to compel discovery of any and all items or information to which the defendant is entitled.

113.     Specifically, this request includes, but is not limited to, the following:

  a.  copies of any and all records, including reports and/or logs, relating to any alleged conspiracy and the arrest of all co-conspirators;

b.  copies of all records, including reports and/or logs, regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation;

c.  copies of any and all reports relating to the booking process in this case;

d.  copies of any and all photographs taken relating to this investigation;

e.  copies of any and all documents and photographs seized on the day of any searches in this case;

f.  inspection of all items seized from the defendant on the day of his arrest;

g.  disclosure of the names and identities of expert witnesses the government intends to call at trial, their qualifications, subject of testimony, and reports, and the results of tests, examinations or experiments which are material to the preparation of the defense or which are intended for use by the government as evidence-in· chief at the trial;

h.  a copy of any search warrant or arrest warrant applied for and/or issued or denied during the course of this investigation (whether state, federal or local); and

i.  pursuant to Rule 12(b)(4)(3) of the Federal Rules of Criminal Procedure, the defendant requests written notification of any evidence that the government intends to use in its case-in-chief that may, in any way, be

subject to a motion to suppress and which the defendant is entitled to discover pursuant to Rule 16.

114.    Rule 12(b) establishes a procedure for notifying a defendant of the government's intention to use certain evidence at trial. The express purpose of this procedure is to afford an opportunity for submission of pre·trial motions seeking the suppression of such evidence [Rule 12(b)(1) and (2)]. Specifically, Rule 12(b)(4)(B) provides that at the defendant's request, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), he may request notice of the government's intent to use (in its evidence·in·chief at trial) any evidence that the defendant may be entitled to discover under Rule 16. To the extent that the government complied with Rule 12(b), they need only so note on the disclosure notice.

115.    Therefore, pursuant to Rule 12(b), request is hereby made for the immediate disclosure by the government of a notice setting forth any evidence which the defendant may be entitled to discover under Rule 16 which the government intends to utilize at trial, including, but not limited to:

a.    Statements of defendant;

b.    Defendant's prior record (if any);

c.    Tangible objects that fall within the purview of the rule;

d. Notice of whether or not any other evidence the government intends to use at trial derived from the "fruits" of any other search other than the searches and seizures in this case;

e. Whether or not any evidence the government intends to introduce at trial derived from identification of Salmon's person;

f. Any and all examination/ test results the Government intends to introduce at trial;

116.    Further, pursuant to Rule 16, defendant requests that the government provide him with discovery as provided by that Rule, to the extent that they have not already done so.

117.    Defendant notes that the government has provided the defense access to some discovery documents in their possession. Nevertheless, this motion is brought to preserve the defendant's discovery rights and to compel materials that have not yet been produced or made available.

**118.    Motion for Jencks Act Disclosure**

119.    Defendant respectfully requests an Order mandating the disclosure of Jencks Act material at least 60 days before trial.

120.    This case is factually complex due to the scope and breadth of the government's investigation, the harvesting and review of metadata, electronic devices, and other electronic information.

121.     In light of the foregoing, it is appropriate for the defense to have access to

early Jencks Act disclosure.

122.     This access is commonplace in complex cases within the United States

District for the Western District of New York.   While it will not change the

contours of the government's proof, it will ensure that the defense has

appropriate time to prepare for trial.  The Court should extend that practice to

this case.

### IX.     Motion for Disclosure Pursuant to Rules 404(b), 608 and 609 of the Federal Rules of Evidence

123.     Pursuant to Rules 12(b)(4), (d)(1) and (2) of the Federal Rules of Criminal

Procedure, and Rules 104(a) and 404(b) of the Federal Rules of Evidence, Salmon

respectfully requests that the government notify him of any evidence that the

government contends would be admissible under Rule 404(b) of the Federal

Rules of Evidence.

124.     The defendant also requests pretrial disclosure of any other evidence the

government intends to use to impeach the defendant's credibility if he should

choose to testify. In the event the government intends to use such evidence, the

defendant requests a pretrial hearing to determine the admissibility of such

evidence.

125.     The defense should be put on notice of the exact nature of this evidence,

the witnesses pertaining thereto, the documents in support thereof, and the

theory upon which the government asserts that admissibility rests. By so notifying the defense in advance of trial, the defendant can file appropriate motion(s) in limine prior to trial and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

126.    The defense requests discovery of all information pertaining to the character and/or conduct that may be used to impeach any witness the government intends to call.

127.    The pretrial determination of the admissibility of this evidence question will serve to ensure the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

### X.    Motion for Leave to Make Further Motions

128.    Salmon respectfully moves the Court for an order allowing him to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery provided by the government or investigation made by the defense, and/or by any information provided by the government in response to the defendant's demands.

129.    The specific requests contained in these motions are not meant to limit or

preclude future requests by the defendant for further relief from this Court as

appropriate.

130.    The reason additional motions should be allowed is that filing these

motions at this time would not be an efficient use of the Court's and the parties'

time and resources, as many of these motions may not be necessary based on

what evidence the government does or does not intend to introduce at trial, or by

other pre-trial developments in this case.

131.    Additionally, other motions may be required depending on the Court's

rulings on the motions made supra and other information or documents

disclosed by the government.

132.    Specifically, Salmon reserves the right to make the following motions at an

appropriate time in the case, in addition to other motions that may be

appropriate: 1) motions in limine related to evidence the government, Salmon or

co· defendants intend(s) to introduce at trial; 2) ex parte motion pursuant to

Federal Rule of Criminal Procedure 17(b)/(c) for an order allowing the pretrial

production of documents; 3) motion pursuant to Federal Rule of Criminal

Procedure 15(a) for pre·trial deposition of a witness; 4) motion for pre·trial

production of government summaries pursuant to Federal Rule of Evidence

1006; 5) motion for a supplemental jury questionnaire or for counsel participation

in voir dire; 6) motion for additional peremptory challenges; 7) Federal Rule of

Criminal Procedure Rule 29 motions at trial; and, 8) motion for various non·

pattern jury instructions.

133.    Additionally, Salmon reserves his right to move to dismiss the indictment.

134.    For the foregoing reasons, the Court should issue an Order permitting

Salmon to make other motions as requested above.


DATED:    February 21, 2025    _ *s/ Eric M. Soehnlein*    _
Eric M. Soehnlein